on the writ for any greater sum whatso-ever." By the English statute of 23 Hen. VI. c. 10, sheriffs and all their ministers may deliver to bail or main-prize, upon sufficient surety, all persons arrested by writ, bill, or warrant in any personal action. Of the sufficiency of that surety, the sheriff was the judge. By the statute of 13 Car. II. st. 2, c. 2, the bail for appearance shall not be bound in a penalty above 40, if the cause of action be not particularly expressed. Before that statute it might be in any sum the sheriff pleased. Day's Com. Dig. "Bail," p. 30, K, 4. But it appears by the cases cited by the counsel of the marshal, from 4 Har. & McH. 5, 159, that neither the statute of 13 Car. II. st. 2, c. 2, nor that of 12 Geo. I. c. 29, nor the subsequent statutes of George, were ever considered in force, or practised upon in Maryland. The present question, therefore, depends upon the statute of 23 Hen. VI. c. 10, and the Maryland acts of 1715, c. 46, § 3, and 1794, c. 54, § 2. By the statute of 23 Hen. VI. c. 10, if the sheriff return a cepi corpus, or reddidit se, he shall have his prisoner at the return day, as before the act. And if he has not, he shall be amerced by the court, upon a rule given to bring in the body. Com. Atty. 311; Eterick v. Cowper, 1 Salk. 99; Day's Com. Dig. "Bail," K, 5. The first amercement was only 40s., but issues were from time to time subsequently increased, until they amounted to the debt or damages, and costs claimed by the plaintiff. This practice under the statute prevailed in Maryland before the year 1794, when the act was passed, making the amercement a direct remedy for the plaintiff, and authorizing the court to amerce the sheriff to the full amount of debt or damages and costs, in the first instance.

We are not informed of any case in Maryland, in which it has been decided that the statute of 1715, c. 46, § 3, comprehends actions of covenant, as well as actions of trespass on the case. The preamble of that section shows that the evil intended to be remedied, was the holding to bail in spiteful and malicious actions of trespass on the case, in which the plaintiffs laid their damages very high. The same cause of complaint was not very likely to exist in actions of covenant, because they must be brought upon the contract of the party, and it is therefore not probable that the legislature intended to extend the remedy to such actions. It is evident from that statute itself, that before that statute the sheriff was bound to take sufficient bail for the appearance of the defendant in all cases; and that he was the judge of its sufficiency. The act of 1794, c. 54, § 2, makes no exception in favor of actions of covenant, or any other action, and is peremptory upon the court. We think, therefore, that the marshal must be amerced to the amount of the damages due from the defendant to the plaintiffs.

THRUSTON, Circuit Judge, not having heard the argument, gave no opinion.

[For further proceedings in this case, see Cases Nos. 17,893 and 17,894.]

## Case No. 17,893.

### WINTER et al. v. SIMONTON.

[3 Cranch, C. C. 62.] [1]

Circuit Court, District of Columbia. Dec. Term, 1826.

COVENANT—ACTION BY SURVIVING PROMISEES.

In an action of covenant by two survivors, upon a charter-party made with three persons, the declaration should state the death of one, and aver that the defendant had not paid the money to the three, or to either of them.

Covenant, on a charter-party made to Samuel Winter, Samuel G. Bowman, and Joshua Bowman. The declaration was in this form: —"John W. Simonton, late of Washington county, was summoned to answer to Samuel Winter and Samuel G. Bowman, survivors of Joshua Bowman, in a plea that he keep with them the covenants made between the said Samuel Winter, and Samuel G. Bowman, and one Joshua Bowman, now deceased, and the said John W. Simonton according to the force, form, and effect of certain articles of agreement of charter-party executed between them, &c., and whereupon the said Samuel Winter and Samuel G. Bowman, by Samuel B. Barrell their attorney, say," &c. And after setting forth the terms of the charter-party, and the employment of the vessel by the defendant, until she was totally lost by the perils of the sea, and that according to the terms of the charter-party the sum of $2,734.17 had become due by the defendant, of which he had notice, "yet though often requested the said Simonton has never paid said sum of $2,734.17 to the plaintiffs, but hath wholly refused and neglected so to do contrary to the form and effect of the said charter-party, and of the said covenants of the said defendant, by him in that behalf made with the said plaintiffs in manner and form aforesaid," &c.

To this declaration the defendant demurred generally; and objected: (1) That the death of Joshua Bowman is not stated in the declaration, but only in the recital of the writ, which is no part of the declaration, but a mere formal part of the record to be made up by the clerk. (2) That it is not averred that the money was not paid to Joshua Bowman in his lifetime. 2 Selw. N. P. 405, 406; Hardr. 320; 1 Chit. Pl. 79, note, 304, 317, 326. (3) That it is not averred that the defendant did not give good bills on Boston, New York, or Philadelphia, which by the

1 [Reported by Hon. William Cranch, Chief Judge.]

terms of the charter-party he was allowed to do.

Mr. Jones, for plaintiffs, contended: (1) That the recital was a sufficient averment of the death of Joshua Bowman. 1 Har. Ent. 35. (2) That the averment that the defendant had never paid the money, implies that it was not paid to the three, or either of them. (3) That although there were two modes of payment allowed, yet a general averment of non-payment included both.

R. S. Coxe, in reply. (1) The death of Joshua Bowman is only suggested in the recital of the writ. There is no averment of his death upon which the defendant could take issue. The precedents all require a positive averment of the death in the declaration. 1 Har. Ent. 35, 163; 2 Chit. 45; 2 Selw. N. P. 405. (2) The averment in the declaration is that the defendant did not pay the money to the plaintiffs; but he might have paid it to Joshua in his lifetime. The covenant is to pay to the three, not to two only. The breach should be coextensive with the covenant. (3) The covenant upon oyer differs from the statement of it in the declaration, where it does not appear to be in the alternative.

THE COURT (MORSELL, Circuit Judge, absent) said that the 2d objection was fatal, and gave no opinion as to the others. The plaintiffs had leave to amend on payment of costs.

[See Cases Nos. 17,892 and 17,894.]

## Case No. 17,894.

### WINTER et al. v. SIMONTON.

[3 Cranch, C. C. 104.] [1]

Circuit Court, District of Columbia.　May Term, 1827. [2]

AGREEMENT TO HIRE VESSEL—ACTION FOR HIRE —CONSTRUCTION OF PLEA — DEPOSITION — CERTIFICATE OF COMMISSIONERS.

1. An agreement to hire a vessel. "from Bath to Havana. and from thence to Mobile or elsewhere. in any legal trade for the space of twelve months, at and after the rate of $425 a month, —$600 to be paid on the arrival of the brig at Havana," the owners covenanting "that the said brig shall be tight, stiff, staunch. and strong, well victualled and manned at their own expense, during that period, the dangers of the sea only excepted"—the hirer paying "all port-charges and pilotage at every place" to which she may go, is not a contract of freight.

2. With regard to the destination and loading of the vessel, the hirer is owner pro hac vice.

3. The general owner is not bound to see that the master performs the voyages indicated by the hirer; the master and mariners being, in that respect, subject to the order and control of the hirer.

4. In an action for the hire of a vessel according to the terms of a sealed agreement, the defendant. by pleading. "that he had paid to the plaintiffs all and every such sums of money as

―――――――――――――――

1 [Reported by Hon. William Cranch, Chief Judge.]
2 [Reversed in 5 Pet. (30 U. S.) 141.]

were become due and payable from the said defendant, according to the tenor and effect of the said articles of agreement," assumes. upon himself the burden of proving that he had paid the hire of the vessel, for the time and at the rate stated in the declaration; and the plaintiffs are not bound to prove any of the facts therein charged.

5. The certificate of the commissioners who have taken a deposition, that they had taken the oath prescribed in their commission, is sufficient evidence of that fact.

6. They are quasi officers of the court, and are to be believed.

Covenant upon an agreement under seal, which was in substance as follows:—That Winter and Bowmans of Bath, (in Maine,) owners of the brig James Munroe of Bath, "agree to let or hire the said brig to the said Simonton, from Bath to Havana, and from thence to Mobile or elsewhere, in any legal trade, for the space of twelve months, at and after the rate of $425 per month, and the said Winter and Bowmans agree that the said brig shall be tight, stiff, staunch, and strong, well victualled and manned at their own expense, during that period, the dangers of the sea only excepted; and the said Simonton on his part agrees to pay or cause to be paid, to the order of the said Winter and Bowmans, on the arrival of the said brig at Havana, the sum of $600; and the said Simonton agrees to pay, or cause to be paid all port-charges and pilotages at every place where she may go to; and the said Simonton further binds himself and agrees to pay, or cause to be paid, after the first-mentioned payment, $600 from time to time, as the charter of the said brig amounts to that sum; that is to say, when the said brig earns $600 at the rate of the before-mentioned charter, it is to be paid in Spanish milled dollars in the United States, or in good and approved bills of exchange at from ten to sixty days sight on Boston, New York, or Philadelphia, to the order of Winter and Bowmans. And it is further understood clearly that the said Winter and Bowmans are to be at no other expense than that of victualling, manning, and keeping the hull and rigging of the said vessel in good order. And the said Simonton agrees that this charter shall commence nine days before the brig's leaving the wharf for sea, which shall be noted at the foot of each agreement, being signed in triplicate; and it is understood, the said Simonton has liberty of lading said vessel with any articles he may think proper, contraband goods always excepted;" penalty $2000; and dated, July 15, 1820. At the foot of the agreement is the following, signed by all the parties:— "In case war between the United States and Spain takes place in the intermediate time of the within specified charter of the within named brig James Munroe, it is understood between the parties that the charter shall be null and void on the first information of that event; but that the said